

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
### TYLER DIVISION

| | | |
|---|---|---|
| GMAC COMMERCIAL MORTGAGE | § | |
| CORPORATION, as Servicer for the | § | |
| FMAC LOAN RECEIVABLES | § | |
| TRUST 1998-C, | § | |
| Plaintiff, | § | |
| | § | CASE NO. 6:06-CV-165 |
| v. | § | |
| | § | |
| EAST TEXAS HOLDINGS, INC., | § | |
| HONEY STOP PROPERTIES, INC., | § | |
| and HONEY STOP FOOD MARTS, | § | |
| INC. | § | |
| Defendants. | § | |

## MEMORANDUM OPINION AND ORDER
## ON PLAINTIFF'S MOTION TO DISMISS COUNTERCLAIMS

Before the Court is Plaintiff GMAC Commercial Mortgage Corporation's ("GMAC" or "Plaintiff") Motion to Dismiss Defendants East Texas Holdings, Inc., Honey Stop Properties, Inc., and Honey Stop Food Marts, Inc.'s ("Defendants") Counterclaims Under Federal Rule of Civil Procedure Rule 12(b)(6) (Doc. No. 29).

### I.  Background

Defendants borrowed funds from Franchise Mortgage Acceptance Company on May 13, 1998 for the purpose of owning and operating gas stations/convenience stores in East Texas.  This transaction was accomplished through the execution of several promissory notes, loan and security agreements, and first deed of trust security agreements and fixture filings in favor of FMAC Loan Receivables Trust 1998-C, the secured party.  Plaintiff GMAC is the servicer of the loans and the sole Plaintiff in this action.

Defendants defaulted on the loans in September 2001.  The parties then entered into a Forbearance Agreement effective January 31, 2002, under which GMAC agreed to forebear from exercising its rights of collection until June 15, 2002, and provided for the entry of an Agreed Judgment of Judicial Foreclosure on the mortgaged property, while at the same time, extinguishing GMAC's right to seek a deficiency judgment against the Defendants in connection with the debt.

Defendants failed to bring the debt current by the agreed June 15 date and an Agreed Final Judgment of Judicial Foreclosure was entered by the 207th District Court of Harris County, Texas in July or August of 2002.

Defendants allege that, after the entry of the Agreed Final Judgment for Judicial Foreclosure, Plaintiff GMAC could have executed on the Judgment of Foreclosure by foreclosing and selling the mortgaged properties.  Plaintiff elected, however, to

pursue[] a course of dealing with [Defendants] that involved repeated

assurances and promises from [Plaintiff] that [Plaintiff] would, despite the

entry of the Final Agreed Judgment for Judicial foreclosure[,] negotiate a

final loan workout/debt restructure agreement with [Defendants] if

[Defendants] would continue to operate, stock and staff the 23 mortgaged

properties, perform maintenance on existing equipment and facilities and

invest in new equipment for the properties, pay taxes on the properties,

allow Long Tex Fuel Company to continue to sell gasoline to each of the

> properties, maintain the upkeep and appearance of the properties and/or
>
> otherwise continue to run the properties that were subject to foreclosure as
>
> an ongoing business of [Plaintiff].

(Defs.' Ans. ¶ 57.)

Defendants further allege that, during the course of the parties' negotiations, Plaintiff represented to Defendants on at least five separate occasions "that an agreement had been reached for a workout/restructuring of the debt in question with only a final approval required from a 'committee' within the corporate structure of the [Plaintiff]."  (Defs.' Ans. ¶ 58.)  Defendants continue:

> Specifically, it was represented to [Defendants] by the agents of [Plaintiff]
>
> who had negotiated the debt restructuring agreements with [Defendants],
>
> including Rick Rickard and Larry Rossolow, that they had never had a deal
>
> turned down by the committee(s) if these individuals were in favor of the
>
> deal and that final approval by the committee(s) was a mere formality, or
>
> words to that effect.  However, on each occasion when such representations
>
> were made, and after further delay and discussion, final approval of the loan
>
> workout/debt restructure agreements by [Plaintiff] was never forthcoming.

(Defs.' Ans. ¶ 58).

Defendants allege that each time Plaintiff GMAC made this representation regarding the loan workout/debt restructure, Defendants relied on GMAC's assurances and promises and expended money maintaining and operating the subject properties.

Plaintiff brought the original complaint seeking the appointment of a receiver as a means of enforcing the Secured Party's Agreed Final Judgement for Judicial Foreclosure for $11,578,917.69.   In response, the Defendants allege counterclaims for fraud, fraudulent inducement, fraud by concealment or non-disclosure, and negligent misrepresentation in connection with Plaintiff's alleged course of dealing with Defendants over the last several years.   Plaintiff GMAC filed the subject Motion to Dismiss Defendants' counterclaims on the grounds that statements regarding an intention to enter a contract where no contract is formed are not actionable as fraud, that the Defendants have failed to plead the elements of fraud with specificity, and because the secured party named in the counterclaim is not a party to the present action and is not represented by counsel.

## II. Analysis

### A.  *Rule 12(b)(6) Standard*

Generally, in appraising the sufficiency of a complaint under Federal Rule of Civil Procedure 12(b)(6), "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."  *Conley v. Gibzon*, 355 U.S. 41, 45–46 (1957); *Lowrey v. Texas A&M Univ. Sys.*, 117 F.3d 242, 247 (5th Cir. 1997).   In considering motions to

dismiss, the complaint must be liberally construed in favor of the plaintiff, and all facts pleaded in the complaint must be taken as true. *Lowrey*, 117 F.3d at 247 (citing *Campbell v. Wells Fargo Bank*, 781 F.2d 440, 442 (5th Cir. 1986)). Furthermore, Rule 12(b)(6) motions are "viewed with disfavor and [are] rarely granted." *Lowrey*, 117 F.3d at 247 (citing *Kaiser Aluminum & Chem. Sales v. Avondale Shipyards*, 677 F.2d 1045, 1050 (5th Cir. 1982)).

## B. *Fraud*

Under Texas law, a claim of fraud requires: (1) a material misrepresentation, (2) that was either known to be false when made or was asserted without knowledge of its truth, (3) which was intended to be acted upon, (5) which was relied upon, and (6) which caused injury. *Beverick v. Koch Power, Inc.*, 186 S.W.3d 145, 153 (Tex. App.—Houston [1st Dist] 2005, no pet. h.) (citing *Formosa Plastics Corp. v. Presidio Engrs. & Contractors, Inc.*, 960 S.W.2d 41, 47 (Tex. 1998)).

A promise to perform a future act by one with no intention of performing may constitute an actionable misrepresentation where the one alleging fraud presents evidence that the representations were made with an intent to deceive and with no intent to perform. *Formosa Plastics*, 960 S.W.2d at 48; *Fluorine On Call, Ltd. v. Fluorogas Ltd.*, 380 F.3d 849, 858 (5th Cir. 2004) (restating Texas law).

In the Defendants' specific allegations of fraud, they indicate that Plaintiff "made material representations to [Defendants] concerning [Plaintiff's] intentions to enter into a

loan workout/restructure with [Defendants]" and "led [Defendants] to believe that [Plaintiff] would enter into a final loan workout/debt restructure agreement" if Defendants would continue to maintain and run the collateral property.  Defendants further allege that "[t]hese representations were false in that [Plaintiff] had no intention to enter into a final workout/debt restructure agreement . . . and merely used the promise of a final loan workout/debt restructure agreement to induce [Defendants] to expend funds . . . on maintaining and improving the properties that [Plaintiff] fully intended to foreclose on at a time of their choosing."  (Defs.' Ans. ¶ 62).

Taking the general rule that, when considering a Rule 12(b)(6) motion to dismiss, claims are to be liberally construed in favor of the claimant, *Lowrey*, 117 F.3d at 247, the Court finds that Defendants have properly pleaded the following elements of a claim of fraud:  (1) a promise by GMAC to enter into a final loan workout/debt restructure agreement; (2) GMAC did not actually intend to enter into a final loan agreement when it made this promise, but rather intended to foreclose at a time of its choosing; (3) GMAC intended to deceive Defendants at the time it made this promise in order to induce Defendants to expend funds on the collateral; (4) Defendants spent money on the continued operation and maintenance of the collateral in reliance on GMAC's representation; and (5) Defendants were injured as a result.  Accordingly, the defendants have alleged a cause of action in fraud. *See Formosa Plastics*, 960 S.W.2d at 48.

Plaintiff GMAC argues that Defendants' fraud claim fails because it does not allege a misrepresentation of an existing fact, but only alleges an intention to enter into a binding agreement at some future date without a binding agreement having actually been entered into. GMAC supports its position by citing two federal cases where statements respecting future performance were held not-actionable under a theory of *negligent misrepresentation*.[1] Only one of GMAC's cases, however, actually addressed an independent fraud claim, and that court's decision turned on the *sufficiency of evidence* presented after a motion for summary judgment.[2] On consideration of a Rule 12(b)(6) motion, this Court's view is limited to the allegations contained in the counterclaim itself. *See Lowrey*, 117 F.3d at 247. Furthermore, it is not a requirement of a fraud claim that there be a binding agreement between the parties, but only that the plaintiff act in reliance on a misrepresentation.[3] *Compare Formosa Plastics*, 960 S.W.2d at 47 (noting elements of fraud claim) *with Haase v. Glazner*, 62 S.W.3d 795,

---

[1] Plaintiff cites *5636 Alpha Road v. NCNB Texas National Bank*, 879 F. Supp. 655 (N.D. Tex. 1995) and *Clardy Manufacturing Co. v. Marine Midland Business Loans, Inc.*, 88 F.3d 347 (5th Cir. 1996).

[2] In *Clardy Manufacturing Co.*, the Fifth Circuit undertook a different analysis to assess a fraud claim, and found that, in the context of a motion for summary judgment, the plaintiff had failed to meet his evidentiary burden to show a knowledge of intent to deceive at the time the representation was made, and also failed to show that the plaintiff's reliance was justified.  88 F.3d at 359–60.

[3] Indeed, the *Clardy Manufacturing* court noted that "[a] promise to do an act in the future . . . is fraud 'only when made with the intention, design and purpose of deceiving, and with no intention of performing the act.'" *Clardy Manufacturing*, 88 F.3d at 360 (citing *Airborne Freight Corp. v. C.R. Lee Enterprises, Inc.*, 847 S.W.2d 289, 294 (Tex. App.—El Paso 1992, writ denied)).

798 (Tex. 2001) (holding that inducement to enter a contract is an essential element of a *fraudulent inducement* claim).

Defendants also allege that representatives of GMAC represented "on at least five separate occasions . . . that an agreement had been reached" with only "final approval required from a 'committee' within the corporate structure of [Plaintiff]." (Defs. Ans. ¶ 58.) These representatives allegedly asserted that "they had never had a deal turned down by the committee(s) if these individuals were in favor of the deal and that final approval by the committee(s) was just a rubber stamp or . . . a mere formality, or words to that effect." (Defs. Ans. ¶ 58.)

To constitute actionable fraud, false representations must relate to material facts, as distinguished from matters of opinion, judgment, probability, or expectation. *First USA Management, Inc. v. Esmond*, 911 S.W.2d 100, 108 (Tex. App.—Dallas 1966), *aff'd in part, rev'd in part on other grounds*, 960 S.W.2d 625 (Tex. 1997); *Georgen-Saad v. Texas Mut. Ins. Co.*, 195 F. Supp. 2d 853, 861 (W.D. Tex. 2002) (citing *Stephanz v. Laird*, 846 S.W.2d 895, 903 (Tex. App.—Houston [1st Dist.] 1993, writ denied)). *See Transport Ins. Co. v. Faircloth*, 898 S.W.2d 269, 276 (Tex. 1995) ("[A] pure expression of opinion will not support an action for fraud.").

A stated opinion may constitute fraud, however, if the speaker had knowledge of its falsity. *Trenholm v. Ratcliff*, 646 S.W.2d 927, 930 (Tex. 1983); *Sergeant Oil & Gas Co., Inc. v. National Maintenance & Repair, Inc.*, 861 F. Supp. 1351, 1358 (S.D. Tex. 1994) (citing *T.M. Brooks v. Parr*, 507 S.W.2d 818, 820 (Tex. Civ. App.—Amarillo 1974, no writ); *Texas*

*Indus. Trust, Inc. v. Lusk*, 312 S.W.2d 324, 327 (Tex. Civ. App.—San Antonio 1958, writ ref'd)). "An expression of an opinion as to the happening of a future event may also constitute fraud where the speaker purports to have special knowledge of facts that will occur or exist in the future." *Id*. Furthermore, "when an opinion is based on past or present facts, an action for fraud may be maintained." *Id*.

In this case, Defendants allege that GMAC's representatives, Rick Rickard and Larry Rossolow, each represented to Defendants that they "had never had a deal turned down by the committee(s) if these individuals were in favor of the deal." These alleged opinions, because they purport to have knowledge of facts that will occur or exist in the future or are based on past or present facts, are actionable misrepresentations. *See Trenholm*, 646 S.W.2d at 931. Throughout Defendants' counterclaim, it is alleged that Plaintiff never intended to actually enter into a final loan workout agreement, but made these statements intending to induce Defendants to spend money on the property.

It does not appear "beyond doubt" that Defendants can prove no set of facts in support of their fraud claim which would entitle him to relief. *See Conley*, 355 U.S. at 45–46. Therefore, construing Defendants' claims liberally, Defendants have indeed alleged facts which, if true, are actionable as a fraudulent promise of future conduct. *See Formosa Plastics*, 960 S.W.2d at 48. Dismissal of the fraud claim is therefore improper.

## C. *Fraudulent Inducement*

Defendants also allege a claim against Plaintiff for fraudulent inducement. Fraudulent inducement is a fraud claim in the context of the formation of a contract. *Haase*, 62 S.W.3d

at 798. The detrimental reliance required for a fraudulent inducement claim is the undertaking of a contractual obligation. *Id*. For a claim of fraudulent inducement, "when a party has not incurred a contractual obligation, it has not been induced to do anything." *Id*.

Plaintiff argues that Defendants have not alleged the existence of a contract nor have they pleaded breach of contract. Indeed, Plaintiff argues, the Defendants indicate that the basis of their fraudulent inducement claim is that Plaintiff "had no intention to enter into a loan" agreement. (Defs.' Ans. ¶ 64).

Defendants respond that they have alleged that FMAC represented to Defendants on several occasions that "an agreement had been reached for a workout/restructuring of the debt in question with only a final approval required from a 'committee' within the [Plaintiff's] corporate structure." (Defs.' Ans. ¶ 58).

The Defendants do not allege that this constitutes the formation of an enforceable contract, however, but only that it amounts to a misrepresentation of a particular fact: i.e., whether an agreement had in fact been reached and whether committee approval was indeed a "mere formality," misrepresentations Defendants claim to have relied upon to their detriment. (Defs.' Resp. 4.) In other words, Defendants claim that, as a result of Plaintiff's misrepresentations, Defendants *believed* that an enforceable contract existed when in fact a contract *did not* exist, and that they acted in reliance on their mistaken belief; Defendants therefore seek damages for that mistaken reliance.[4] Furthermore, Plaintiff's alleged

---

[4] Though a party alleging fraudulent inducement may recover compensatory damages, *see, e.g., Ludlow v. DeBerry* , 959 S.W.2d 265, 277 (Tex. App.—Houston [14 Dist.] 1997, no

statement that "an agreement had been reached" cannot operate both as a misrepresentation of existing fact and as legally-operative words creating a contract.  While Plaintiff's conduct may constitute fraud generally, it is not fraudulent inducement.

Because the existence of an enforceable contract is an essential element of a fraudulent inducement claim, and because the Defendants have not alleged the existence of an enforceable contract, their claim for fraudulent inducement fails and should be dismissed.

### D. *Fraud by Concealment or Non-Disclosure*

Fraudulent concealment or non-disclosure is a sub-category of fraud that occurs when a party with a duty to disclose a material fact fails to disclose that fact.  *Schlumberger Technology Corp. v. Swanson*, 959 S.W.2d 171, 181 (Tex. 1997) (citing *Smith v. National Resort Communities, Inc.*, 585 S.W.2d 655, 658 (Tex. 1979)).  *See Bradford v. Vento*, 48 S.W.3d 749, 754–55 (Tex. 2001) (noting the elements of fraud and fraud by concealment or non-disclosure).  A duty to disclose a material fact can arise from operation of law when one party knows that the other party is relying on a concealed fact, provided that the concealing party also knows that the relying party is ignorant of the concealed fact and does not have an equal opportunity to discover the truth.   *Union Pacific Resources Group, Inc. v.*

---

writ), Defendants do not seek enforcement or rescission of a contract, which are also remedies associated with fraudulent inducement claims. *See Koral Industries v. Security-Connecticut Life Ins. Co.*, 802 S.W.2d 650, 651 (Tex. 1990) (recision a recoverable remedy for fraudulent inducement); *D.S.A., Inc. v. Hillsboro Indep. Sch. Dist.*, 973 S.W.2d 662, 663 (Tex. 1998) (benefit of the bargain a remedy for fraudulent inducement).

*Rhone-Poulenc, Inc.*, 247 F.3d 574, 586 (5th Cir. 2001) (citing *World Help v. Leisure Lifestyles, Inc.*, 977 S.W.2d 662, 670 (Tex. App.—Forth Worth 1998, pet. denied)).

Defendants allege that Plaintiff FMAC failed to disclose its intention *not* to enter into a loan workout agreement when it urged Defendants to maintain and run the collateral property.  Defendants also allege that Plaintiff knew that Defendants were ignorant of its concealed intention and knew that Defendants did not have an equal opportunity to discover these concealed material facts.  (Defs.' Ans. ¶ 66.)  Accordingly, the Court finds that the Defendants have properly stated a claim for fraudulent concealment or non-disclosure.

### E. *Negligent Misrepresentation*

Negligent misrepresentation consists of (1) a representation made by a defendant in the course of the defendant's business, or in a transaction in which he has a pecuniary interest; (2) the defendant supplies "false information" for the guidance of others in their business; (3) the defendant did not exercise reasonable care or competence in obtaining or communicating the information; and (4) the plaintiff suffers pecuniary loss by justifiably relying on the representation.  *Federal Land Bank Ass'n of Tyler v. Sloane*, 825 S.W.2d 439, 442 (Tex. 1991) (citing RESTATEMENT (SECOND) OF TORTS (1977)).

The type of false information contemplated in a negligent misrepresentation case is a misstatement of an existing fact, not a promise of future conduct.  *Swank v. Sverdlin*, 121 S.W.3d 785, 802 (Tex. App.—Houston [1st Dist.] 2003, pet. denied); *Airborne Freight Corp., Inc. v. C.R. Lee Enterprises, Inc.*. 847 S.W.2d 289, 294 (Tex. App.—El Paso 1992). Furthermore, "negligent misrepresentation does not occur when a defendant simply makes

Page 12 of 17

a guess as to a future, unknown event." *Sergeant Oil & Gas*, 861 F. Supp. at 1360 (citing *City of Beaumont v. Excavators & Constructors, Inc.*, 870 S.W.2d 123, 138 (Tex. App.—Beaumont 1993, writ denied)).

As noted above, Defendants' claims of fraud and negligent misrepresentation stem from "repeated assurances by [Plaintiff] and [its] agents that a final loan workout/debt restructuring agreement would be reached." (Defs.' Ans. ¶ 59.)  Defendants also claim that Plaintiff represented on several occasions "that an agreement *had been reached* for a workout/restructuring of the debt in question with only a final approval required from a 'committee' within the [Plaintiff's] corporate structure."  (Defs.' Ans. ¶ 58.)  Plaintiff's representatives, Rick Rickard and Larry Rossolow, allegedly indicated that "they had never had a deal turned down by the committee(s) if these individuals approved of the deal" and that final approval "was just a rubber stamp . . . a mere formality, or words to that effect." (Defs.' Ans. ¶ 58).

The Court finds that these allegations are sufficient to support a claim for negligent misrepresentation.  Specifically, Defendants allege a misrepresentation of an existing fact or facts—i.e., that an agreement had been reached, and that Rickard and Rossolow had never had a deal turned down when they approved the deal and that committee approval was a mere formality.

Plaintiff argues that the facts alleged in this case are similar to those in *Clardy Manufacturing Co. v. Marine Midland Business Loans, Inc.*, where bank customer applying for a loan was told by a bank officer that the plaintiff would have a commitment letter on a

loan "by Friday or the following Monday or Tuesday," that the plaintiff "'expected' a letter of commitment to be issued within the next two to five days," and that from the bank's point of view "everything looked good." 88 F.3d 347, 357 (5th Cir. 1996). The Fifth Circuit held that because the bank officer did not represent that the loan had in fact been approved, or that a letter had already been issued, the bank officer's statement was a misstatement of a future action and not an existing fact. *Id.*

Plaintiff also argues that this case is similar to *5636 Alpha Road v. NCNB Texas National Bank*, in which a bank officer told the plaintiff that the plaintiff's loan would be extended at the end of several months and that the loan was a "done deal." 879 F. Supp. 655, 665 (N.D. Tex. 1995). The *Alpha Road* court held that the bank officer's statement was not that a loan had been approved, but that "the bank's future performance was a 'done deal.'" *Id.* The *Alpha Road* court held that the bank officer's statement was not one of existing fact and dismissed the debtor's negligent misrepresentation claim. *Id.*

In *Clardy Manufacturing* and *Alpha Road*, however, the bank officers merely predicted future, unknown events and did not make concrete statements of existing fact—i.e., they did not indicate that the loans had been approved. In this case, however, GMAC's representatives indicated that "they had never had a deal turned down," that committee approval was a mere formality, and that the parties had actually reached an agreement. These are more than guesses as to future, unknown events, *see Sergeant Oil & Gas*, 861 F. Supp. at 1360, but are words indicating ascertainable facts, which Defendants allege they relied upon to their detriment. Considering that the facts alleged in the complaint are to be

construed liberally, and that motions to dismiss are "viewed with disfavor and are rarely granted," *Lowrey*, 117 F.3d at 247, the Court finds that the defendants have properly alleged facts supporting a claim of negligent misrepresentation.

### F.  *Failure to Plead with Specificity*

Rule 9(b) of the Federal Rules of Civil procedure provides that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." FED. R. CIV. P. 9(b).  Under this rule, a party must plead each of the elements of fraud with particularity.  *Shushany v. Allwaste, Inc.*, 992 F.2d 517, 521 (5th Cir. 1993). "[T]he Rule 9(b) standards require specificity as to the statements (or omissions) considered to be fraudulent, the speaker, when and why the statements were made, and an explanation why they are fraudulent." *Plotkin v. IP Axess Inc*.  407 F.3d 690, 696 (5th Cir. 2005) (citing *Nathenson v. Zonagen Inc*., 267 F.3d 400, 412 (5th Cir. 2001)).  Whatever the purpose of Rule 9(b), "the who, what, when, and where must be laid out before access to the discovery process is granted." *Williams v. WMX Technologies, Inc.*, 112 F.3d 175, 178 (5th Cir. 1997). *See also id.* at 177 (concluding that state claims of fraud do not escape Rule 9(b)'s pleading requirement).

In this case, the Court finds that Defendants, while stating causes of action for fraud, fraud by concealment or non-disclosure, and negligent misrepresentation generally, have failed to meet Rule 9(b)'s heightened pleading requirement.  Specifically, though Defendants have identified the contents of the misrepresentations and the identities of the persons making the misrepresentations, they have not included allegations of time, place, to whom

Page 15 of 17

the misrepresentations were made, and why the statements were fraudulent. The Court, however, will allow Defendants an opportunity to amend their counterclaims to comply with Rule 9(b)'s heightened pleading standard. The Court will again consider the sufficiency of Defendants' counterclaims under Rule 9(b), upon the motion of either party, after the amended counterclaims have been filed. Because this Court is dismissing the Defendants counterclaim for fraudulent inducement, the Defendants should not re-plead that claim.

### G.  *The Secured Party*

Finally, Plaintiff notes that the Defendants have asserted their counterclaims against the secured party, FMAC Receivables Trust 1998-C ("FMAC"), which is not a party to this action. Rule 13(h) provides that persons other than those made parties to the original action may be made parties to a counterclaim or cross-claim in accordance with Rules 19 and 20 of the Federal Rules of Civil Procedure. FED. R. CIV. PRO. 13(h). Defendants ask that the Court allow them to formally join FMAC as a party to this action and ask the Court to stay ruling on GMAC's motion to dismiss until FMAC is joined. The Court is of the opinion that, because at least two of the Defendants counterclaims generally state causes of action for fraud, leave to join the secured party as a party to this action should be granted, and is done so by separate order entered this day.

### III. Conclusion

For the above stated reasons, the Court is of the opinion that Plaintiff GMAC's Motion to Dismiss should be GRANTED as to Defendants' counterclaim for fraudulent

inducement, but should be DENIED as to Defendants' counterclaims for fraud, fraud by concealment or non-disclosure, and negligent misrepresentation.  It is therefore

ORDERED that Defendants East Texas Holdings, Inc., Honey Stop Properties, Inc., and Honey Stop Food Marts, Inc.'s counterclaim for fraudulent inducement is DISMISSED. It is further

ORDERED that Defendants are granted leave to file an amended counterclaim that conforms with Rule 9(b) of the Federal Rules of Civil Procedure.  Such amended counterclaim must be filed within 20 days of receipt of this order.  If Defendants fail to file an amended counterclaim within that time, the Court will dismiss the Defendants' remaining counterclaims for failure to comply with Rule 9(b) of the Federal Rules of Civil Procedure.

**It is so ORDERED.**

**SIGNED this 17th day of July, 2006.**

MICHAEL H. SCHNEIDER
UNITED STATES DISTRICT JUDGE